# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATHANIEL STIEF, :
        Plaintiff, :
 :
v. : Civil No. 5:20-cv-06272-JMG
 :
ROBESON TOWNSHIP, *et al.*, :
        Defendants. :

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                                  **May 26, 2021**

Defendant Brad Brenner, an officer with the Robeson Township Police Department, arrested Plaintiff Nathaniel Stief after discovering marijuana and firearms in his home. Stief now alleges that Defendants Brenner and Robeson Township[1] infringed his constitutional rights and committed trespass to chattels and malicious prosecution in violation of Pennsylvania state law. Before the Court is the defendants' motion to dismiss. For the reasons explained below, the motion will be granted.

## I.    FACTUAL ALLEGATIONS[2]

This case stems from a series of interactions between Brenner and Stief. Their saga begins on October 2, 2018, when Stief was arrested for violating a protection from abuse (PFA)

---

[1] Stief also named Robeson Township Police Department as a defendant. *See* Compl. ¶ 4, ECF No. 1. He has since indicated that he is no longer pursuing claims against that entity. *See* Pl.'s Opp'n 5, ECF No. 3-1.

[2] This summary is premised on the factual allegations contained in Stief's Complaint. For purposes of this motion, the allegations are presumed to be true and are construed in the light most favorable to Stief.

order concerning his estranged wife.³ Compl. ¶¶ 6–8, ECF No. 1 [hereinafter "Compl."]. Brenner, who executed the arrest at Stief's home, noticed marijuana in the premises. *Id.* ¶ 9. He thereafter obtained a search warrant and, when he returned to the home, found three gun safes inside. *Id.* Stief was still in custody, so Brenner phoned in the fire department to cut the safes open. *Id.* Their search uncovered firearms, and the safes were destroyed in the process. *Id.*

Brenner believed that Stief's possession of firearms constituted a third-degree felony, so he secured an arrest warrant from a Magisterial District Judge. *Id.* ¶¶ 10–12. Later in October, Brenner executed the warrant and once again arrested Stief at his home. *Id.* ¶ 13. Stief "was angry and made a number of angry statements" to Brenner. *Id.* ¶ 14. This prompted Brenner to charge Stief with making terroristic threats. *Id.* ¶ 15. Stief, facing felony firearms charges and accused of making terroristic threats, remained in custody for one day. *Id.* ¶ 16.

At the preliminary hearing for Stief's criminal case, the Berks County District Attorney reduced the firearms charge to a misdemeanor. *Id.* ¶ 18. About six months later, after conducting discovery and filing pretrial motions, the District Attorney *nolle prossed* the terroristic threats charge. *Id.* ¶¶ 19–20. Stief ultimately pleaded guilty to possessing firearms and marijuana, for which he received four years' probation. *Id.* ¶ 20.

Stief subsequently initiated this action against Brenner and Robeson Township. He claims that both defendants violated his constitutional rights and committed trespass to chattels and malicious prosecution under Pennsylvania state law.

## II. STANDARD

A complaint may be dismissed for failing to "state a claim upon which relief can be

---

³ The Complaint states that these events occurred in 2020. *See* Compl. ¶ 6. This is a "typographical error." *See* Pl.'s Opp'n 1 n.1, ECF No. 3-1.

granted." FED. R. CIV. P. 12(b)(6). To survive the motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). A plaintiff cannot rely on mere "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

Third Circuit courts use a three-step framework to evaluate the sufficiency of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, we note "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). We then "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In performing this analysis, we "accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

### III. DISCUSSION

The defendants move to dismiss the Complaint in its entirety. We first consider Stief's federal claims before turning to his state law claims.

A.      **Federal Claims**

In Count III, Stief brings claims under 42 U.S.C. § 1983 against Brenner and Robeson Township.[4] *See* Compl. ¶¶ 37–44. He alleges that the defendants conspired to deprive him of his constitutional rights by (1) initiating a malicious prosecution for terroristic threats; (2) executing an unlawful arrest on felony firearms charges; and (3) destroying his gun safes. *Id.* ¶ 38. After analyzing Stief's conspiracy claim, we will review the allegations against Robeson Township and then consider the allegations against Brenner.

1.      **Defendants Robeson Township and Brenner (§ 1983 Conspiracy Liability)**

To state a section 1983 claim, a plaintiff must show "a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (internal citation omitted). At issue here is Stief's right to be free from unlawful searches and seizures, which defendants allegedly violated by (1) maliciously prosecuting Stief for making terroristic threats; (2) unlawfully arresting Stief for a felony firearms charge; and (3) destroying Stief's gun safes while searching his home.[5]

---

[4]     The statute provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

[5]     Stief specifically pleads that defendants violated the Fifth and Fourteenth Amendments. *See* Compl. ¶ 44. However, as both parties appear to recognize, Stief's claims sound in the Fourth Amendment. *See* Defs.' Mot. 8, ECF No. 2-1; Pl.'s Opp'n 7, ECF No. 3-1. The failure to mention the Fourth Amendment does not warrant dismissal. *See, e.g.*, *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 556 (E.D. Pa. 2019) ("The Court construes the reference to the Fourteenth Amendment simply as incorporating Plaintiffs' Fourth Amendment claims of . . . unlawful arrest and search, and malicious prosecution . . . ."); *Bletz v. Corrie*, No. 1:16-cv-00717, 2019 WL 1354005, at *3 n.7 (M.D. Pa. Mar. 26, 2019) ("To the extent Plaintiff[] refer[s] to the Fourteenth

4

"In order to state a claim for conspiracy under section 1983, a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (internal quotation marks and citation omitted). To that end, Stief must allege plausible facts concerning "(1) the period of the conspiracy; (2) the object of the conspiracy; and (3) certain actions of the alleged conspirators taken to achieve that purpose." *Hankin Fam. P'ship v. Upper Merion Twp.*, No. 01-1622, 2012 WL 43599, at *17 (E.D. Pa. Jan. 6, 2012) (internal quotation marks and citation omitted); *see also Rosembert*, 14 F. Supp. 3d at 648 ("To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor." (internal quotation marks and citation omitted)).

Stief's conspiracy allegations are limited to a single conclusory paragraph within the Complaint. He only alleges that defendants "conspir[ed] to violate the rights, privileges, and immunities guaranteed to [him] by the Constitution and laws of the United States and the laws of the Commonwealth of Pennsylvania." Compl. ¶ 38(c). This does not pass muster. Simply put, Stief has not "averred facts sufficient to support a reasonable inference that defendants reached an agreement or a meeting of the minds concerning their alleged violations of plaintiff's rights." *Chan v. Cnty. of Lancaster*, No. 10-cv-03424, 2012 WL 4510776, at *1 (E.D. Pa. Sept. 28, 2012). Stief merely recites "the empty term[] 'conspiracy' . . . without supplying the requisite

---

Amendment for purposes of the application of the Fourth Amendment to actions on the part of a state, the Court recognizes that the Fourth Amendment applies to conduct of state officials by operation of the Fourteenth Amendment."); *Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 715 (E.D. Pa. 2007) (implying a Fourth Amendment claim even though the "Complaint is unartfully drafted").

details of an agreement." *Cooper v. City of Chester*, No. 11-5381, 2011 WL 6046934, at *8 (E.D. Pa. Dec. 5, 2011). Accordingly, his section 1983 conspiracy claim must be dismissed. *See, e.g.*, *Miles v. Twp. of Barnegat*, 343 F. App'x 841, 845 (3d Cir. 2009) ("[T]he single-sentence conclusory allegations of a conspiracy contained in the [complaint] are insufficient to allege a plausible conspiracy . . . under § 1983." (internal citation omitted)); *Villarosa v. N. Coventry Twp.*, No. 15-4975, 2016 WL 4062731, at *10 (E.D. Pa. July 28, 2016) ("Plaintiff alleges only conclusory allegations of conspiracy which are insufficient to state a § 1983 claim.").

### 2. Defendant Robeson Township (§ 1983 Municipal Liability)

Section 1983 liability does not attach to a municipality based on theories of *respondeat superior* or vicarious liability. *McCall*, 396 F. Supp. 3d at 558–59 (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, a plaintiff must "establish a causal connection between the [constitutional] violation and the municipality's policy or custom." *Valenzuela v. Roselle*, No. 5:20-cv-03638-JMG, 2021 WL 1667473, at *4 (E.D. Pa. Apr. 28, 2021) (citing *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020)). There are two ways to make this showing. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). First, "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)). Alternatively, a plaintiff may allege that his or her injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Id.* (internal quotation marks and citation omitted).

A plaintiff alleging an unconstitutional policy must "point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the

relevant subject." *Id.* To show an unconstitutional custom, a plaintiff "must evince a course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 106 (internal citation omitted).

By contrast, a plaintiff bringing a "failure or inadequacy" claim must demonstrate that the "failure or inadequacy amount[ed] to deliberate indifference on the part of the municipality." *Id.* (internal citation omitted). Deliberate indifference is found where "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "[A] pattern of similar constitutional violations by untrained employees" is ordinarily necessary to demonstrate deliberate indifference, but a single incident may, in certain situations, be sufficient. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal quotation marks and citation omitted). In these so-called "single-incident cases," the "need for training can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989)); *see also id.* at 223–24 ("Liability in single-incident cases depends on [t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." (internal quotation marks and citation omitted)).

Here, Stief alleges that Brenner violated his constitutional rights while "[a]cting under color of law and pursuant to official policy or custom." Compl. ¶ 38. This sole allegation is conclusory and thus insufficient to support a section 1983 claim against Robeson Township. Indeed, Stief does not point to any specific municipal policy that led to his alleged injuries.

7

"Conclusory and general claims that paraphrase [section] 1983 will not satisfy federal pleading requirements," yet that is all Stief has alleged. *McCall*, 396 F. Supp. 3d at 559 (citing *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014)); *see also Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 226 (E.D. Pa. 2005) (dismissing section 1983 claim where plaintiff failed to plead "any factual allegations . . . [referencing] any official municipal policy or custom endorsing the . . . Defendants' conduct"); *Washington v. City of Phila.*, No. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012) (dismissing section 1983 claim where plaintiff's "description of the policy or custom falls far short of a 'specif[ication of] what exactly that custom or policy was,' as our Court of Appeals requires" (quoting *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009))); *Hill v. Borough of Doylestown*, No. 14-2975, 2015 WL 1874225, at *3 (E.D. Pa. Apr. 23, 2015) ("[Plaintiff's] Complaint alleges only that the municipalities have adopted a custom or policy of permitting injuries of the sort that he suffered. This, without more, is not enough to survive a motion to dismiss.").

Stief's attempt at pleading a "failure or inadequacy" claim also falls short. He alleges that all defendants "had power to prevent or aid in preventing the commission" of his injuries, but "knowingly, recklessly, or with gross negligence[,] failed or refused to do so." Compl. ¶ 42. He further alleges that all defendants "directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of [the] police officers involved in these incidents." *Id.* ¶ 43. These conclusory allegations do not include any facts suggesting deliberate indifference. Stief "omits any reference from which we could reasonably conclude that others have suffered from a pattern of similar constitutional violations." *Washington*, 2012 WL 85480, at *8 (internal quotation marks omitted). And because Stief "alleges no facts for the Court to infer that his injury was a 'highly predictable consequence of

8

the municipality's failure to train and supervise its officers,'" he has not stated a cognizable "single-incident claim" either. *Ferrara v. Del. Cnty.*, No. 18-cv-05157, 2019 WL 2568117, at *8 (E.D. Pa. June 21, 2019) (quoting *Thomas*, 749 F.3d at 225). Therefore, we must dismiss Stief's section 1983 claims against Robeson Township. *See, e.g.*, *Durham v. City of Phila.*, No. 20-3944, 2020 WL 6940021, at *4 (E.D. Pa. Nov. 25, 2020) (dismissing section 1983 claims where plaintiff "fail[ed] to plead facts which may allow us to plausibly infer municipality liability").

### 3. Defendant Brenner (§ 1983 Liability in Individual Capacity)

Count III also raises section 1983 claims against Brenner, but the Complaint is silent as to whether Stief is suing Brenner in his individual capacity.[6] *See* Compl. ¶¶ 37–44. In this situation, we "look to the complaints and the 'course of proceedings'" for guidance. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (quoting *Graham*, 473 U.S. at 167 n.14). The following factors, in particular, suggest that a defendant is being sued in his or her individual capacity:

> [T]he plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits, and the nature of any defenses raised in response to the complaint . . . [b]ecause qualified immunity is available only in a personal capacity suit.

*Jones v. Culinary Manager II*, 30 F. Supp. 2d 491, 496 (E.D. Pa. 1998) (internal quotation marks and citation omitted).

---

[6] To the extent Stief is also suing Brenner in his official capacity, "[t]he Supreme Court has stated that a suit under Section 1983 against a municipal officer in his or her official capacity is, in actuality, a suit against the municipality that the officer represents; an official capacity suit is essentially treated as a suit against the entity itself." *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 265 (E.D. Pa. 2001) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). For the reasons explained above, the section 1983 claims against Robeson Township must be dismissed. Therefore, any official capacity claims against Brenner must also be dismissed. *See Estate of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp. 3d 279, 289 (E.D. Pa. 2015) (dismissing official capacity claims against state officials because section 1983 claims against the relevant municipal entity were dismissed); *see also Fitzgerald v. Martin*, No. 16-3377, 2017 WL 3310676, at *6 (E.D. Pa. Aug. 3, 2017) (dismissing official capacity claims as "duplicative of the claims" against the municipality).

9

Here, Stief requests both compensatory and punitive damages from Brenner, and Brenner raises a qualified immunity defense in response to the Complaint. Compl. ¶¶ 31, 44; *see also* Defs.' Mot. 7–8, ECF No. 2-1. This suggests that Brenner is being sued in his individual capacity. *See, e.g.*, *Estate of Tyler*, 108 F. Supp. 3d at 289 n.2 (concluding that claims were brought against defendants in their individual capacities where plaintiff sought punitive and compensatory damages, and defendants advanced an absolute immunity defense in response to the complaint).

Having found an individual capacity suit, we now consider Stief's claims against Brenner. Stief alleges that Brenner violated his constitutional rights by (1) initiating a malicious prosecution for terroristic threats; (2) executing an unlawful arrest for felony firearms charges; and (3) destroying his gun safes. Compl. ¶¶ 37–44. Brenner contends that these claims fail because he is entitled to qualified immunity. Defs.' Mot. 7–8, ECF No. 2-1.

"Qualified immunity shields government officials from personal liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *George v. Rehiel*, 738 F.3d 562, 571–72 (3d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021) (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)). We have discretion to examine either prong first. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If the plaintiff fails to satisfy either

prong, the defendant is entitled to judgment as a matter of law." *Id.* (citing *Pearson*, 555 U.S. at 232).

We will focus on the first prong, as it is dispositive in this case. *See Wiggs v. Foley*, No. 5:20-cv-02267, 2021 WL 462782, at *4 (E.D. Pa. Feb. 9, 2021) ("Where a plaintiff fails to establish the underlying offense through his or her allegations, 'there is no necessity for further inquiries concerning qualified immunity.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). Stief has failed to plausibly allege that Brenner violated his constitutional rights.

Stief initially raises a malicious prosecution claim against Brenner. *See* Compl. ¶ 38(a) ("Defendant Brenner . . . unlawfully and maliciously charged Plaintiff with offenses that he did not lawfully commit . . . ."). "To prove malicious prosecution under [section] 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

Stief's malicious prosecution fails at the outset because he fails to adequately allege that Brenner initiated a criminal proceeding. "In most circumstances, a plaintiff can not proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual." *Harris v. City of Phila.*, No. Civ. A. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998) (internal citation omitted); *see also Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring) ("The principal player in carrying out a prosecution . . . is not police officer but prosecutor."); *Henderson v. City*

11

*of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) ("[P]rosecutors rather than police officers are generally responsible for initiating criminal proceedings . . . ." (quoting *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005)).

An exception to this rule exists where the police officer "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Henderson*, 853 F. Supp. 2d at 518 (quoting *Brockington*, 354 F. Supp. 2d at 569); *see also Milbourne v. Baker*, No. 11-cv-1866-JD, 2012 WL 1889148, at *11 (E.D. Pa. May 23, 2012) ("A plaintiff can proceed against a police officer for malicious prosecution only if the officer fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." (internal quotation marks and citation omitted)). Stief has not raised any allegations that trigger this exception. Indeed, he does not present any "allegations that permit the reasonable inference that [Brenner] provided false information to the prosecutor . . . or that [Brenner] interfered in any way with the prosecutor's independent decision to bring charges." *Dress v. Falls Twp.*, No. 16-4918, 2017 WL 480410, at *2 (E.D. Pa. Feb. 6, 2017). His malicious prosecution claim against Brenner must be dismissed as a result.

Stief then claims that he was unlawfully arrested on felony firearms charges. *See* Compl. ¶ 38(b). The crux of the claim is that Brenner secured an arrest warrant in contravention of the Pennsylvania Rules of Criminal Procedure. *See id.* ¶ 10. At the time of Stief's arrest, possession of firearms after the issuance of a PFA order was a misdemeanor. 18 PA. STAT. AND CONS. STAT. ANN. § 6105(c)(6) (West 2021). While a misdemeanor charge ordinarily calls for the issuance of a summons, PA. R. CRIM. P. 509, Brenner believed that Stief—in possession of

firearms after the issuance of a PFA order—committed a third-degree felony, so he secured an arrest warrant instead. *See* Compl. ¶ 12. This decision, Stief argues, "violate[d] the law and Plaintiff's rights." Pl.'s Opp'n 6, ECF No. 3-1; *see also id.* at 8 ("There was no legal cause to initiate the case against Stief by arrest warrant, nevertheless Officer Brenner caused an arrest warrant to be issued.").

To establish a claim for false arrest, as Stief attempts to do here, "a plaintiff must demonstrate that the officers conducting the arrest lacked probable cause." *Rosembert*, 14 F. Supp. 3d at 641 (citing *Wright v. City of Phila.*, 409 F.3d 595, 601 (3d Cir. 2005)). A plaintiff who later pleads guilty cannot argue that the preceding arrest was without probable cause, even if the guilty plea is for a lesser offense. *Walker v. Clearfield Cnty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011); *see also Ehly v. City of Phila.*, No. Civ. A. 03-3634, 2004 WL 2583818, at *3 (E.D. Pa. Nov. 9, 2004) ("Probable cause for a § 1983 unlawful arrest claim is . . . established by guilty plea or conviction, although not where the conviction is later overturned." (internal citation omitted)).

*Cresci v. Aquino*, No. 13-4695, 2017 U.S. Dist. LEXIS 178464, at *17–18 (D.N.J. Oct. 26, 2017), is instructive here. In *Cresci*, the court dismissed false arrest and false imprisonment claims against police officers who arrested the plaintiff. *Id.* The plaintiff had alleged that the arresting officers "obtain[ed] an arrest warrant where only a summons would be appropriate under State law."[7] *Id.* at *17. "Noncompliance with State procedures," while relevant, did not

---

[7] New Jersey, like Pennsylvania, distinguishes between arrest warrants and summonses. *See* N.J. CT. R. 3:3-1. In *Cresci*, "[a]lthough [plaintiff] was alleged to have committed two relatively non-serious crimes, [defendants] obtained a complaint-warrant instead of a complaint-summons from a judge. The failure to observe the proper summons/warrant procedure, says [plaintiff], meant that he was arrested when he should have been served with a summons to appear." *Cresci*, 2017 U.S. Dist. LEXIS 178464, at *18 n.9 (internal citation omitted).

13

establish a section 1983 claim on its own. *Id.* at *19. Rather, "[t]o make out a constitutional claim of false arrest or imprisonment," plaintiff had to "show arrest or confinement without probable cause." *Id.* (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634–37 (3d Cir. 1995)); *see also id.* at *17–18 ("[O]btaining an arrest warrant where only a summons would be appropriate under State law is not *per se* a violation of the federal Constitution.")

Here, like the plaintiff in *Cresci*, Stief "simply conflates the violation of a State rule with a constitutional lack of probable cause to arrest." *Id.* at *19. Stief does not raise any plausible allegations showing that Brenner, or the Magisterial District Judge who issued the arrest warrant, "lacked sufficient facts to support a finding of probable cause to believe the charged offense[] w[as] committed, and that [Stief] was the person who committed [it]." *Id.* at *20. Further, Stief pled guilty to a reduced, misdemeanor firearms charge, based on the same events. This "sworn admission of guilt subsumes a finding of probable cause." *Id.* at *22. For these reasons, the false arrest claim against Brenner must be dismissed.

Finally, Stief claims that Brenner destroyed his gun safes "without legal cause to do so." Compl. ¶ 38(e). This claim sounds in the Fourth Amendment—in particular, the right to be free from an unreasonable search.[8] *See* U.S. CONST. amend IV; *see also* Compl. ¶ 34 ("While police

---

[8] As discussed above, Stief does not explicitly reference the Fourth Amendment in the Complaint. This is not fatal to his claim. Given the liberal notice pleading standard, "[w]e are satisfied that the language in [the] complaint, which includes the basic relevant facts and a reference to unreasonable [searches] . . . is sufficient to allow [Stief] to proceed." *Lynn v. Schertzberg*, 169 F. App'x 666, 669 (3d Cir. 2006) (evaluating section 1983 claims even though they "should have been pled more explicitly in Fourth Amendment terms"). The parties are certainly on notice of Stief's claim, as they both discuss Fourth Amendment caselaw in their briefing. *See* Defs.' Mot. 8, ECF No. 2-1; Pl.'s Opp'n 9–10, ECF No. 3-1 (discussing the "right to be free from an unreasonably destructive search"); *see also Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 256 (3d Cir. 1998) (explaining that a claimant must "provide a statement sufficient to put the opposing party on notice of the claim" (internal quotation marks and citation omitted)).

14

searches do allow destruction of personal property in some cases, the destruction of the safes was clearly unjustified in this case.").

"To succeed on a Fourth Amendment claim, a plaintiff must show that the defendant's actions constituted a 'search' or 'seizure' within the meaning of the Fourth Amendment and were 'unreasonable' under the circumstances." *Verdier v. Borough*, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)). The parties do not dispute that a "search" occurred here; they instead dispute whether Brenner's decision to cut open Stief's gun safes was reasonable. "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of [a] warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted). While "[e]xcessive or unnecessary destruction of property in the course of a search" may be unreasonable and thereby violate the Fourth Amendment, *id.*, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979) (citing *United States v. Brown*, 556 F.2d 304, 305 (5th Cir. 1977)).

As currently alleged, Stief does not state a plausible claim against Brenner for unreasonable execution of a search warrant. Brenner's conduct in executing the warrant was neither excessive nor unnecessary, distinguishing this case from one on which Stief principally relies, *Wood v. Se. Pa. Transp. Auth.*, No. 14-4183, 2016 WL 2619411, at *7 (E.D. Pa. May 6, 2016). There, the court rejected a qualified immunity defense where defendants, while searching an automobile, destroyed "property of the subject that ha[d] no connection to the object of the search." *Id.* Brenner, by contrast, did not damage property outside the scope of his lawful search for contraband. Instead, by calling in the fire department to cut open Stief's safes, Brenner engaged in conduct reasonably necessary to execute the search warrant. *Cf. Badillo v.*

*Stopko*, No. 11-4815, 2012 WL 1565303, at *6 n.7 (D.N.J. May 2, 2012) (dismissing unreasonable search claim under section 1983 because defendants justifiably engaged in a "thorough search of the premises," even though plaintiffs alleged that "furniture was destroyed" and "holes were made in the walls" as a result); *Adams v. Orange Cnty. of N.Y.*, No. 13 CV 8549(VB), 2015 WL 5459794, at *3 (S.D.N.Y. Sept. 1, 2015) ("[A] plaintiff must allege the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant or search occurred." (internal quotation marks and citation omitted)). We therefore dismiss Stief's final section 1983 claim against Brenner.

### B.     Leave to Amend Federal Claims

Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). We therefore dismiss Stief's section 1983 claims without prejudice, and will permit Stief to file a curative amendment.

### C.     State Law Claims

Stief's remaining claims arise under Pennsylvania state law. "A court 'may decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction.'" *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (quoting 28 U.S.C. § 1367(c)(3)). Where, as here, "all federal claims are eliminated before trial, 'the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Accordingly, we will not exercise supplemental jurisdiction over Stief's remaining state law claims, and will dismiss those claims without prejudice. If Stief does not file a curative amendment to his federal claims, then he may refile his state law claims in state court. *See id.* at 519–20.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge